UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NICOLE GREENE on behalf of T.K., a minor,**<br><br>Plaintiff,<br><br>v.<br><br>**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**<br><br>Defendant. | Civ. No. 22-00184 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Nicole Greene, on behalf of T.K., a minor, seeks review pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying T.K.'s application for child's Supplemental Security Income ("SSI"). For the reasons stated below, the Commissioner's decision is **REVERSED and REMANDED** for proceedings consistent with this opinion.

**I.   BACKGROUND**[1]

Ms. Greene filed an application for SSI on behalf of her son T.K., a minor, on July 13, 2018, alleging a disability which began on August 1, 2017. (R. 12.) This application was denied at the initial and reconsideration levels of administrative review, so at Ms. Greene's request ALJ Leonard F. Costa convened a hearing on June 18, 2020. (R. 12, 22–41.) In a written decision, ALJ Costa found that T.K. did not have an impairment or combination of

---

[1]   Citations to the record are abbreviated as follows:

"DE" = docket entry

"R. _" = Administrative Record (DE 5)

"Pl. Br." = Nicole Greene's moving brief (DE 8)

"Def. Br." = Commissioner's opposition brief (DE 9)

impairments that meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments and thus has not been disabled since his application was filed in July 2018. (R. 13–18.) The Appeals Council denied Ms. Greene's request for a review on November 17, 2021, and this appeal followed. (R. 1–6.)

## II. DECISION FOR REVIEW

### A. The Three-Step Process and this Court's Standard of Review

In the case of an applicant for benefits who is a minor, a three-step evaluation process, rather than the Social Security Administration's usual five-step evaluation process for adults, is employed. 20 C.F.R. §§ 404.1520, 416.924. The plaintiff has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the inquiry ends, because the claimant is not disabled.

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id.* Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment which, alone or in combination with others, meets or equals the requirements of a Listing, and that also meets the duration requirement, the claimant is disabled. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). When determining whether an impairment medically equals a listing, the ALJ considers all the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.,* 130 F. App'x 557, 560 (3d Cir. 2005). Whether a claimant's impairment "functionally equals" a Listing is determined by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally equal a Listing, the claimant's impairment must result in "marked" limitations in two domains of functioning or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id.* A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.* An "extreme" limitation in a domain occurs when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation also means a limitation that is "more than marked" and is the rating given to the worst limitations. *Id.* However, "extreme limitation" does not necessarily mean a total lack or loss of ability to

function. *Id.* It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id.*

Finally, and importantly, the ALJ uses a "whole child" approach when determining whether a minor claimant's impairment is functionally equivalent to a Listing. SSR 09-1p. Under this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id.* After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id.* An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id.* (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id.* "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id.*

This Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.*

**B. The ALJ's Decision**

ALJ Costa undertook the necessary three-step inquiry.

**Step 1**

The ALJ determined that T.K. had not engaged in substantial gainful activity since July 13, 2018, the date of his application for SSI. (R. 13.)

**Step 2**

The ALJ found that T.K. had the severe impairments of central auditory processing disorder; hearing loss; attention deficit hyperactivity disorder (ADHD); and a learning disability. (R. 13.)

**Step 3**

The ALJ found that T.K. did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R.13.) The ALJ concluded that T.K.'s central auditory processing disorder did not meet the requirements of Listing 102.10 (hearing loss not treated with cochlear implantation).[2] (R. 13–14.) The ALJ also concluded that the evidence in support of T.K.'s neurocognitive and neurodevelopmental disorders did not establish any marked or extreme limitations under Listing 112.02 (neurocognitive disorders for children age 3 to

---

[2]  **102.10 *Hearing loss not treated with cochlear implantation.***

. . .

B. For children from age 5 to the attainment of age 18:

1. An average air conduction hearing threshold of 70 decibels or greater in the better ear and an average bone conduction hearing threshold of 40 decibels or greater in the better ear (see [Listing] 102.00B2f); or

2. A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see [Listing] 102.00B2f); or

3. An average air conduction hearing threshold of 50 decibels or greater in the better ear and a marked limitation in speech or language (see [Listings] 102.00B2f and 102.00B5).

18)[3] or Listing 112.11 (neurodevelopmental disorders for children age 3 to 18).[4] (R. 14.) Similarly, the ALJ found that T.K.'s impairments did not functionally

---

[3] **112.02 Neurocognitive disorders (see [Listing] 112.00B1), for children age 3 to attainment of age 18, satisfied by A and B, or A and C:**

A. Medical documentation of a clinically significant deviation in normal cognitive development or by significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:

    1. Complex attention;

    2. Executive function;

    3. Learning and memory;

    4. Language;

    5. Perceptual-motor; or

    6. Social cognition.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see [Listing] 112.00F):

    1. Understand, remember, or apply information (see [Listing] 112.00E1).

    2. Interact with others (see [Listing] 112.00E2).

    3. Concentrate, persist, or maintain pace (see [Listing] 112.00E3).

    4. Adapt or manage oneself (see [Listing] 112.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see [Listing] 112.00G2b); and

    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see [Listing] 112.00G2c).

[4] **112.11 Neurodevelopmental disorders (see [Listing] 112.00B9), for children age 3 to attainment of age 18, satisfied by A and B:**

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

6

equal any Listing, determining that of the six domains of functioning, T.K. displayed a marked limitation only as to acquiring and using information. (R. 14, 16.) Otherwise, the ALJ concluded, T.K. exhibited less than a marked limitation in attending and completing tasks, interacting and relating with others, and health and physical well-being, while he showed no limitation in moving about and manipulating objects and the ability to care for himself. (R. 14–17.)

Inherent in the ALJ's reasoning is a finding that this was a close case. Although the ALJ found that "the evidence confirms that the claimant has several impairments that impact his ability to function," he concluded that "the evidence does not confirm that the claimant is totally disabled." (R. 16.)

### III.   DISCUSSION

I review the final decision of the Commissioner, which in this case is the decision of the ALJ, to assess whether it rests on the application of proper legal standards and whether it is supported by "substantial evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); 42 U.S.C. § 405(g) (the "findings of

---

1. <u>One</u> or both of the following:

   a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

   b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

2. Significant difficulties learning and using academic skills; or

3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see [Listing] 112.00F):

1. Understand, remember, or apply information (see [Listing] 112.00E1).

2. Interact with others (see [Listing] 112.00E2).

3. Concentrate, persist, or maintain pace (see [Listing] 112.00E3).

4. Adapt or manage oneself (see [Listing] 112.00E4).

7

the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). On the other hand, an ALJ's legal conclusions are subject to plenary review by this Court. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck*, 181 F.3d at 431. Nonetheless, for a remand to be warranted, an ALJ's legal error must be harmful, i.e., it must have affected the outcome of the case. *See Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021); *Rutherford*, 399 F.3d at 553.

The claimant "bears the burden of proving that his impairments equal or meet those listed in Appendix 1." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151–52 (3d Cir. 2008). "[I]f a claimant's impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Id.*; *see also* 20 C.F.R. § 416.926(b). The Third Circuit has stated that the ALJ must perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). However, the ALJ is "not require[d] . . . to use particular language or adhere to a particular format in conducting his analysis"; rather, there must be a "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

Ms. Greene acknowledges that T.K.'s hearing impairment does not meet the elements of Listing 102.10. (Pl. Br. p. 12 n.2.) Ms. Greene argues, however, that ALJ Costa failed to adequately consider T.K.'s hearing impairment in combination with his other impairments (central auditory processing disorder, attention deficit hyperactivity disorder, and learning disability) and generally failed to consider the combined effect of all his impairments. (Pl. Br. 8–16.) In further support of her position, Ms. Greene points to an apparent inconsistency in ALJ Costa's opinion. When evaluating whether T.K.'s impairments meet or medically equal Listings 112.02 or 112.11, the ALJ concluded that the evidence failed to establish "any marked or extreme limitations in understanding,

remembering or applying information"; however, when evaluating whether T.K.'s impairments functionally equaled the Listings, the ALJ concluded that T.K. had "a marked limitation in acquiring and using information." (R. 14.) While these criteria are not wholly identical, they are very closely related.

ALJ Costa's opinion does not contain a separate written analysis of whether T.K.'s impairments in combination meet or medically equal the Listings. The ALJ did state at one point, however, that he "considered the Listing of Impairments but the medical evidence does not establish that the claimant's impairment(s), individually *or in combination*, meet or equal in severity the criteria of a listed impairment." (*See* R. 13 (emphasis added).) The ALJ also recited later in his decision that he considered T.K.'s impairments in combination. (*See* R. 15-17); *see also Ochs v. Comm'r of Soc. Sec.*, 187 F. App'x 186, 189 (3d Cir. 2006) ("*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."). Under the particular circumstances of this case, these invocations of the governing standard, unlinked to any specific analysis, do not constitute a record that permits this Court to discharge its review function with confidence.

In addition, the ALJ's decision appears to contain an inconsistency that requires, if not resolution, at least some further explanation. Pursuant to Listing 112.00E1, the area of understanding, remembering, or applying information looks at the claimant's ability to "learn, recall, and use information to perform age-appropriate activities." Similarly, the area of acquiring and using information considers "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). Although both areas consider the claimant's ability to learn and use information, the ALJ found a marked limitation in one, but not in the other. There is no requirement that the ALJ reach the same conclusion in both areas; however, when considering this unexplained inconsistency in conjunction with

the other concerns raised in this Opinion, I am persuaded that a second look and an explicit discussion are warranted.

Regarding the ALJ's analysis of whether T.K. has an impairment that is functionally equivalent to the Listings, Ms. Greene asserts that the ALJ should have found an "extreme" rather than a "marked" limitation in the area of acquiring and using information, and a "marked" rather than a "less than marked" limitation in the area of attending and completing tasks. (Pl. Br. 17–20.) In my review, I cannot re-weigh the evidence or impose my own factual findings. See *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Rather, I must determine whether the ALJ's decision is supported by substantial evidence. *See Jones*, 364 F.3d at 503.

Regarding the area of acquiring and using information, Ms. Greene simply disagrees with the outcome and fails to raise any specific arguments, which is insufficient to warrant remand. However, given that I am ordering remand for other reasons, the ALJ may, in his discretion, choose to reconsider his decision in this area in the context of all the evidence.

Regarding the area of attending and completing tasks, Ms. Greene asserts that the ALJ incorrectly cited a teacher's questionnaire completed in February 2019. (Pl. Br. 19; *see* Ex. 7E, R. 208–15.) When determining that T.K. had a "less than marked" limitation in the area of attending and completing tasks, the ALJ stated that the teacher's questionnaire "noted that [T.K.] produced quality work when focused but did have difficulty concentrating and produced inaccurate work due to rushing." (R. 17 (citing Ex. 7E).) It appears the ALJ may have been referring to the section of the questionnaire regarding acquiring and using information, rather than the section regarding attending and completing tasks. The section of the questionnaire regarding acquiring and using information states: "When [T.K.] is focused, he produces quality work. However, he often finds it hard to concentrate." (R. 209.) In contrast, the section of the questionnaire regarding attending and completing tasks states that "[T.K.] gets his work done, but often without accuracy. He rushes to get done." (R. 210.) The relevant section of the questionnaire also states that T.K.

10

has an "obvious problem" carrying out multi-step instructions, organizing his own things and school materials, and working without distracting himself or others. Further, the questionnaire provides that T.K. has a "serious problem" completing his work accurately without careless mistakes. (R. 210.) T.K. also requires a personal classroom aide and Ms. Greene testified at the hearing that for two years the school has contacted her to sit in the classroom with T.K. when he becomes disruptive. (*See* R. 38–39.)

The government recognizes the likely mis-citation, but asserts that "there was no harm as the ALJ found anyway that T.K. had a marked limitation in attending and completing tasks." (Def. Br. p. 21 n.2.) That is incorrect; the ALJ found that T.K. had a "less than marked" limitation in the area of attending and completing tasks. (R. 14.) The ALJ found a "marked" limitation only in the area of acquiring and using information. (R. 14.) Had the ALJ concluded that T.K. had a "marked" limitation in the area of attending and completing tasks, thereby finding a "marked" limitation in two domains, T.K.'s impairments would have been "functionally equivalent" to the listings. *See* 20 C.F.R.§ 416.926a(a) ("By 'functionally equal the listings,' we mean that your impairment(s) must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme limitation in one domain[.]"). Therefore, the error cannot be deemed harmless.

## IV. CONCLUSION

For the foregoing reasons, I will remand the Commissioner's decision for proceedings consistent with this Opinion. A separate order will issue.

Dated: March 29, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

11